Mr. Eugene E. Agger, the present Commissioner of Banking and Insurance, presented a petition to me seeking instructions with respect to the institution of a suit against the former Commissioner of Banking and Insurance, Louis A. Reilly, his predecessor in office.
It appears from the petition that Mr. Reilly took possession of the New Jersey Title Guarantee and Trust Company on February 14th, 1939, for the purpose of liquidating it *Page 59 
under the statute. On December 28th, 1939, Mr. Reilly, in accordance with a compromise agreement made with the taxing officials of the City of Jersey City, paid to said city the sum of $530,476.39 in full settlement of all accrued taxes, interest, penalties and redemption of tax sale certificates upon some 333 properties either owned by the said Title Company or in which it had an interest. The petition further sets forth that the total amount of taxes, interest and penalties due upon said properties was approximately $703,505.
The first report of the Commissioner covering his administration of the said Title Company was filed in this court on September 16th, 1940. It is a voluminous and detailed document. All tax payments made during the period covered by the report are therein set forth and the amounts are allocated to each individual property, but the fact that the sum above mentioned was paid at one time, and in a lump sum, is not specifically stated. After notice and hearing, the report was confirmed by an order of this court made on November 22d 1940.
In the month of December, 1943, almost four years after these payments were made, Mr. Edison conducted an inquiry into the making of the payments, above referred to, and on January 17th, 1944, the last day of his term as Governor of this State, made a public report which contained his conception of the transaction to the effect that part of the payment was not justifiable. Mr. Edison conceded that many of the properties concerned were sound assets and as to them, that the payment of taxes was proper "so that a good part of the total paid was above criticism." He asserted, however, that other properties were not worth saving and that no payment should have been made with respect to them. Mr. Edison reached the conclusion that "the evidence points to gross negligence in the administration of the liquidation, and misapplication of the funds of the liquidation in making some of the tax payments included in the amount paid to Jersey City on December 28th, 1939."
The report concludes with the recommendation that the legislature impeach Mr. Reilly and that it enact curative legislation which would place more stringent restrictions upon *Page 60 
the authority of the Commissioner of Banking and Insurance in the conduct of liquidation. The report also directs Mr. Agger, as Commissioner of Banking and Insurance, to bring suit against Mr. Reilly and suggests that any creditor of the liquidation has the right to file a class bill against Mr. Reilly specifically urging the Federal Deposit Insurance Corporation, as the largest creditor, to seek to "recoup whatever funds were negligently or improperly expended."
The report was given wide publicity. No creditor brought suit and the legislature enacted no so-called curative legislation. Commissioner Agger, however, was summoned to attend a joint meeting of the judiciary committees of the State Senate and the General Assembly at which meeting he was advised that in the opinion of the committees it was his "clear and official duty immediately to institute such court action or actions that will result in a prompt judicial determination of Mr. Reilly's liability for the wrongful acts alleged against Mr. Reilly in Mr. Edison's report."
The petition further alleges that Commissioner Agger thereupon consulted his counsel who advised him that it was his duty to submit the matter to this court for instructions "because such suit does not offer any certain prospect of success and recovery and might be costly to the liquidation." Hence this application.
A copy of Mr. Edison's report is annexed to the petition. The report asserted that the right to conduct the inquiry into the transaction in question arises by virtue of the provisions ofR.S. 52:15-7. I deem it unnecessary in this ex parte
proceeding to pass upon the constitutionality of the above mentioned statute or to determine the propriety of an executive inquiry into the conduct of the present liquidation of the said Title Company and I did not review the correctness of the conclusions reached by Mr. Edison.
The Commissioner of Banking and Insurance is given a wide discretion in the conduct of the liquidation of a closed bank. Among his specifically enumerated powers is his right to enter into compromises and settlements. R.S. 17:4-106. The payment of the taxes, above mentioned, clearly falls within the scope of the authority granted by the statute. *Page 61 
The legislature has ordained that a banking commissioner cannot be held liable either civilly or criminally "for any error in judgment or discretion in any action taken or omitted by him" in the conduct of liquidation. R.S. 17:4-104. It may perhaps be contended that the above language is too broad a cloak of immunity to drape about the shoulders of a public official. It is not the province of this court, however, to weigh the wisdom of the legislative policy expressed in the statute.
The petitioner is, therefore, advised that no action can be maintained. *Page 62